UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 MAY 18 PM 4:04
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CRIMINAL NO. _____ |
| | § | **A10 CR 320 LY** |
| Plaintiff, | § | <u>INDICTMENT</u> |
| | § | |
| v. | § | |
| | § | |
| PEDRO FUENTEZ(1), | § | [Vio:  Ct I: 21 U.S.C. § 846 {21 U.S.C. |
|   a.k.a. "Oso" | § | §§ 841(a)(1) & (b)(1)(A)} – Conspiracy |
|         "Tigre" | § | to Possess with Intent to Distribute 5 |
|         "Sergio Romel Belmantes-Tejada" | § | Kilogram or More of Cocaine] |
|         "Sergio Belmontes-Romel" | § | |
|         "Sergio Romel Belmontes" | § | |
|         "Sergio Belmontez" | § | |
|         "Sergio Romel-Belmontes" | § | |
| JOSE REYNALDO CRUZ(2), | § | |
|   a.k.a. "Rojo" | § | |
| JOSE GUADALUPE-VASQUEZ(3) | § | |
|   a.k.a. "Cuco" | § | |
| OSCAR EDGARDO-GUILLEN(4), | § | |
|   a.k.a. "Cabo" | § | |
|         "Jose Fransisco Castillo" | § | |
|         "Jose Francisco Castellon" | § | |
| EMMANUEL NAVA-BENITEZ(5), | § | |
| IRMA MAJANO-ORELLANA(6), | § | |
|   a.k.a. "Licha" | § | |
|         "Irma Elizabeth Majano-Orellana" | § | |
| WALTER ROSALES(7), | § | |
|   a.k.a. "Scott" | § | |
|         "Walter Morales Rosales" | § | |
|         "Jorge Alberto Salazar" | § | |
|         "Jose Alberto Salazar" | § | |
|         "Jorge Alberto Salazar-Interiano" | § | |
| AURELIO MATUTE-GUILLEN(8), | § | |
| JOSE GOROSIETA-CAMPUZANO(9), | § | |
|   a.k.a. "Patron" | § | |
|         "The Don" | § | |
|         "Senior" | § | |
|         "Maestro" | § | |

| | |
|---|---|
| LUIS OSORIO-DEPAZ(10), | § |
|     a.k.a. "Chaparito" | § |
| CELIA AGUIRRE-FRIAS(11), | § |
|     a.k.a. "Guera" | § |
|         "Celia Elizabeth Aguirre-Frias" | § |
| JAVIER CRUZ(12), | § |
|     a.k.a. "Curso" | § |
|         "Javier Lopez Cruz" | § |
|         "Jose Javier Cruz-Enrique" | § |
|         "Jose Javier Cruz | § |
| OSCAR BENITEZ-CORTEZ(13), | § |
|     a.k.a. "Robucio" | § |
| TINO BARELA-LASO(14), | § |
|     a.k.a. "Primo" | § |
| | § |
|                 Defendants. | § |
| | § |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At various times material to this indictment:

Defendants, **PEDRO FUENTEZ**, a.k.a. "Oso" & "Tigre"; **JOSE REYNALDO CRUZ**, a.k.a. "Rojo"; **JOSE GUADALUPE-VASQUEZ**, a.k.a. "Cuco"; **OSCAR EDGARDO-GUILLEN**, a.k.a. "Cabo"; **EMMANUEL NAVA-BENITEZ**; **IRMA MAJANO-ORELLANA**, a.k.a. "Licha"; **WALTER ROSALES**, a.k.a. "Scott"; **AURELIO MATUTE-GUILLEN**; **JOSE GOROSIETA-CAMPUZANO**, a.k.a. "Patron," "The Don," "Senior," "Maestro"; **LUIS OSORIO-DEPAZ**, a.k.a. "Chaparito"; **CELIA ELIZABETH AGUIRRE-FRIAS**, a.k.a. "Guera"; **JAVIER CRUZ**; **OSCAR BENITEZ-CORTEZ**, a.k.a. "Robucio"; **TINO BARELA-LASO**, a.k.a. "Primo" and others, were members of a drug conspiracy. The drug distribution network of this conspiracy reached from the United States/Mexico border to

numerous distributors in Austin, Texas and elsewhere.

Telephones were utilized extensively by members of the conspiracy in order for co-conspirators to coordinate drug deals. Coconspirators would learn when drugs were available, the quantity and quality of the cocaine available, the price to be charged, the location where the various deliveries would be conducted and arrangements made for subsequent payment for the drugs upon completion of sales.

**Objective of the Conspiracy**

The objective of the conspiracy was to make money for the coconspirators from the sale of controlled substances without being caught by law enforcement. In order to ensure that conspirators maximized their chance to avoid detection by law enforcement, a number of protective and security measures were employed to defeat tactics and techniques used by law enforcement to uncover and curtail their illegal activities. These protective measures included, but were not limited to, the use of stash houses to store narcotics away from coconspirators' primary residences, the use of cell phones that were placed in false names and addresses and easily discarded, and the use of counter-surveillance techniques.

**Cell Phones and Other Methods of Communication**

The use of cell phones made it easier for coconspirators to defeat tactics utilized by law enforcement to uncover their activities. Coconspirators obtained cell phones using either false names and addresses or providing no name or address, since, unlike a home telephone, a cell phone did not need to be connected to a specific address. Suppliers would often change their cell phones or cell phone numbers which made it more difficult for law enforcement to maintain knowledge of the currently utilized telephone numbers. When coconspirators suspected that their

previously used cell phone telephone numbers might have been compromised, such as when one of their customers was arrested, they could easily quit using or "drop" a cell phone and quickly obtain a new cell phone. Text messages and e-mail messages were also utilized as other methods of communicating information between various members. Also during the course of this conspiracy, various members would utilize coded language to disguise their activities. Some examples include referencing cocaine as "Coronas," "Bud Light," "Tostones," "Tortillas," "Tires," "Mercedes," "Shirts," "Guys," "Wood," "Cement," "Pesos'" etc. These various forms of communications were attempts to, in part, separate various aspects of the organization from other members and to avoid using a single method of communicating to avoid detection by law enforcement.

**Modus Operandi**

JOSE GOROSIETA-CAMPUZANO, hereinafter "CAMPUZANO," functioned as the main distribution point in Austin, Texas. CAMPUZANO would coordinate shipments of cocaine from areas on the Texas/Mexico border with others. After receiving shipments of cocaine at various locations to include storage locations and residences from drug couriers or "mules," CAMPUZANO would then use other coconspirators, to include PEDRO FUENTEZ, hereinafter "FUENTEZ" to aid his distribution of cocaine in Austin, Texas and elsewhere.

FUENTEZ would then distribute cocaine to various coconspirators such as JAVIER CRUZ, TINO BARELA-CORTEZ, among others, who would further distribute the cocaine and then collect the money for return to FUENTEZ and then to CAMPUZANO. At times, members of the organization would dilute ("cut") the cocaine received and then repackage it as if it was in its original condition. CAMPUZANO would return the money, either in person or via drug couriers

to the Texas/Mexico border region.

## COUNT ONE
### Conspiracy
### [21 U.S.C. § 846 {21 U.S.C. §841(a)(1) & 841(b)(1)(A)}]

The Grand Jury incorporates by reference the Introduction of this Indictment as though fully restated and re-alleged herein.

Beginning on or about January 2007 and continuing until on or about the date of this indictment, in the Western District of Texas and elsewhere, the Defendants,

PEDRO FUENTEZ(1)
JOSE REYNALDO CRUZ(2)
JOSE GUADALUPE-VASQUEZ(3)
OSCAR EDGARDO-GUILLEN(4)
EMMANUEL NAVA-BENITEZ(5)
IRMA MAJANO-ORELLANA(6)
WALTER ROSALES(7)
AURELIO MATUTE-GUILLEN(8)
JOSE GOROSIETA-CAMPUZANO(9)
LUIS OSORIO-DEPAZ(10)
CELIA ELIZABETH AGUIRRE-FRIAS(11)
JAVIER CRUZ(12)
OSCAR BENITEZ-CORTEZ(13)
TINO BARELA-LASO(14)

did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with one or more persons, known and unknown, to the Grand Jury to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

In violation of Title 21, United States Code, Section 846.

## OVERT ACTS

In furtherance of the conspiracy and in order to effect the objects thereof, the Defendants and their coconspirators, known and unknown to the Grand Jury, committed and caused to be committed one or more of the following overt acts, among many others, in the Western District of Texas and elsewhere:

1. On or about October 13, 2009, WALTER ROSALES, delivered a quantity of cocaine to a confidential source (CS1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed WALTER ROSALES arrive and meet with CS1 at a prearranged location and make a delivery of cocaine.

2. On or about October 15, 2009, WALTER ROSALES, delivered a quantity of cocaine to a confidential source (CS1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed WALTER ROSALES arrive and meet with CS1 at a prearranged location and make a delivery of cocaine.

3. On or about November 18, 2009, WALTER ROSALES, delivered a quantity of cocaine to a confidential source (CS1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed WALTER ROSALES arrive and meet with CS1 at a prearranged location and make a delivery of cocaine.

4. On or about January 20, 2010, WALTER ROSALES, delivered a quantity of cocaine to an Undercover Officer (UC1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed WALTER ROSALES arrive and meet with UC1 at a prearranged location and make a delivery of cocaine.

5. On or about March 8, 2010, WALTER ROSALES, delivered a quantity of

cocaine to an Undercover Officer (UC1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed WALTER ROSALES arrive and meet with UC1 at a prearranged location and make a delivery of cocaine.

6. On or about December 18, 2009, PEDRO FUENTEZ, delivered approximately One Hundred Thirty-Three (133) grams of cocaine to a confidential source (CS1) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed PEDRO FUENTEZ and OSCAR EDGARDO-GUILLEN arrive and meet with CS1 at a prearranged location and make a delivery of cocaine.

7. On or about February 24, 2010, WALTER ROSALES, at approximately 18:12, made an outgoing telephone call to CELIA ELIZABETH AGUIRRE-FRIAS. During this telephone call, AGUIRRE-FRIAS arranged to receive a quantity of cocaine from ROSALES.

8. On or about February 25, 2010, WALTER ROSALES, at approximately, 05:23, made an outgoing telephone call to CELIA ELIZABETH AGUIRRE-FRIAS. During this telephone call, ROSALES discussed "mixing powder" and agreed to provide AGUIRRE-FRIAS a quantity of cocaine.

9. On or about March 13, 2010, at approximately 13:59, PEDRO FUENTEZ made an outgoing telephone call to OSCAR BENITEZ-CORTEZ. PEDRO FUENTEZ said the "ten whole ones" were there. OSCAR BENITEZ-CORTEZ said he would call back.

10. On or about March 13, 2010, at approximately 15:58, PEDRO FUENTEZ received an incoming call from JOSE GOROSIETA-CAMPUZANO. PEDRO FUENTEZ said he had moved to a new location and would call around 17:30 or 18:00 to give JOSE GOROSIETA-CAMPUZANO some "receipts."

11. On or about March 13, 2010, at approximately 18:33, PEDRO FUENTEZ made an outgoing call to JOSE GOROSIETA-CAMPUZANO. PEDRO FUENTEZ called JOSE GOROSIETA-CAMPUZANO "Patron" and asked if JOSE GOROSIETA-CAMPUZANO wanted to send the guy over there because PEDRO FUENTEZ had "five" for him. PEDRO FUENTEZ said the stuff is still there that he brought yesterday and he did not know if the guy left with the family to Houston, but he would call him tomorrow at 11 or 12. JOSE GOROSIETA-CAMPUZANO asked if the stuff needed to be taken out tomorrow. PEDRO FUENTEZ said yes. JOSE GOROSIETA-CAMPUZANO said he would send the guy over because if the guy leaves now, it would be dark.

12. On or about March 21, 2010, at approximately 14:18, PEDRO FUENTEZ made an outgoing telephone call to JOSE REYNALDO-CRUZ, who arranged to receive a "Chiquito one" or small one on behalf of "Becky LNU" from FUENTEZ.

13. On or about March 26, 2010, at approximately 11:02, PEDRO FUENTEZ made an outgoing telephone call to JOSE REYNALDO CRUZ. CRUZ told FUENTEZ that he wanted "tostones." FUENTEZ replied that he would send Alex.

14. On or about March 30, 2010, at approximately 11:02, PEDRO FUENTEZ made an outgoing telephone call to JOSE REYNALDO CRUZ discussing that he would be coming by soon but that he could not make the delivery of "tortillas" and not to inform an associate of that fact.

15. On or about March 28, 2010, at approximately 18:38, PEDRO FUENTEZ made an outgoing telephone call to IRMA MAJANO-ORELLANA asking her how many she needed because he only had a few left. MAJANO-ORELLANA replied that she wanted the same as last

8

time.

16. On or about April 2, 2010, at approximately 15:53, PEDRO FUENTEZ made an outgoing telephone call to IRMA MAJANO-ORELLANA. MAJANO-ORELLANA asked FUENTEZ if he had any. MAJANO-ORELLANA advised FUENTEZ that she needed one quarter and if she could get it for "six twenty-five" like before. FUENTEZ and MAJANO-ORELLANO settled on a price of "sixty-three."

17. On April 2, 2010, at approximately 10:47, FUENTEZ made an outgoing call to GOROSIETA-CAMPUZANO. During this call, FUENTEZ addressed GOROSIETA-CAMPUZANO as "Patron." GOROSIETA-CAMPUZANO advised FUENTEZ the "man" would be there in half an hour. GOROSIETA-CAMPUZANO told FUENTEZ to settle the balance that was pending with the "man" and with the new stuff that arrives.

18. On April 2, 2010, at approximately 10:53, FUENTEZ made an outgoing on to OSCAR BENITEZ-CORTEZ. During the call, FUENTEZ asked BENITEZ-CORTEZ if he wanted some to which BENITEZ-CORTEZ responded that he did. FUENTEZ asked if he still wanted a "half." BENITEZ-CORTEZ asked how much it would cost. FUENTEZ replied, "twelve two."

19. On April 2, 2010, at approximately 11:25, FUENTEZ made an outgoing call to EDGARDO-GUILLEN. During the call, FUENTEZ asked EDGARDO-GUILLEN where they were. EDGARDO-GUILLEN said they were on their way. FUENTEZ told EDGARDO-GUILLEN to look for the "white" vehicle with license plates "8B8B556."

20. On April 2, 2010, at approximately 11:27, FUENTEZ received an incoming from EDGARDO-GUILLEN. During the call, EDGARDO-GUILLEN asked if the plate was

"B8B556."

21. On April 2, 2010, at approximately 11:31, FUENTEZ received an incoming call from GOROSIETA-CAMPUZANO. During this call, GOROSIETA-CAMPUZANO complained that FUENTEZ was not answering his phone and the guy was arriving. GOROSIETA-CAMPUZANO said he thought the guy was at the "corner."

22. On April 2, 2010, at approximately 11:32, FUENTEZ received an incoming call from EDGARDO-GUILLEN. During the call, EDGARDO-GUILLEN said there was "nothing" there. FUENTEZ said it was not at the house. EDGARDO-GUILLEN said they circled around. EDGARDO-GUILLEN asked if it was the "same car." FUENTEZ said it was a "Chevy." EDGARDO-GUILLEN said the plate was not the same, but it was "dirty" in the back. EDGARDO-GUILLEN said he would circle again.

23. On April 2, 2010, at approximately 11:33, FUENTEZ received an incoming call from OSORIO-DEPAZ. During the call, OSORIO-DEPAZ said he would be there in "ten" minutes.

24. On April 2, 2010, at approximately 11:37, FUENTEZ received an incoming call from EDGARDO-GUILLEN. During the call, EDGARDO-GUILLEN advised FUENTEZ that there was "nothing" there. FUENTEZ told EDGARDO-GUILLEN to park the car "outside" and come on foot. FUENTEZ said he did not want the car to be seen nearby.

25. On April 2, 2010, at approximately 11:39, FUENTEZ received an incoming call from OSORIO-DEPAZ. During the call, OSORIO-DEPAZ asked FUENTEZ if he was "inside the house." FUENTEZ advised he was.

26. On April 2, 2010, at approximately 11:04, investigators observed

10

GOROSIETA-CAMPUZANO carry an H.E.B. grocery bag into a residence at 12401 Copperfield, where he met OSORIO-DEPAZ. Then both came out of the residence carrying a blue and white Igloo cooler and placed it into a white Honda passenger car bearing Texas license plates BH9R53. Then GOROSIETA-CAMPUZANO and OSORIO-DEPAZ drove to 13838 The Lakes Boulevard where GOROSIETA-CAMPUZANO got out of the Honda and into another vehicle. OSORIO-DEPAZ continued to drive the Honda bearing Texas license plates BH9R53 with the Igloo cooler and traveled to 8405 Winterhaven and pulled into the driveway. Investigators observed individuals believed to be FUENTEZ and EDGARDO-GUILLEN meet with the operator of the white Honda [OSORIO-DEPAZ] and go inside 8405 Winterhaven.

27. On or about April 3, 2010, at approximately 11:12, FUENTEZ made an outgoing call to JOSE GOROSIETA-CAMPUZANO. CAMPUZANO stated that he only had "one thousand pesos" but wanted "two thousand" and didn't know if FUENTEZ needed it.

28. On or about April 3, 2010, at approximately 11:14, FUENTEZ made an outgoing call to OSCAR BENITEZ-CORTEZ stating that something just came in.

29. On or about April 3, 2010, at approximately 13:04, FUENTEZ received an incoming call from OSORIO-DEPAZ who stated that he would be there in about "forty" minutes.

30. On or about April 3, 2010, at approximately 13:04, PEDRO FUENTEZ made an outgoing telephone call to AURELIO MATUTE-GUILLEN and asked them where they were and directed them to go to the "office."

31. On or about April 3, 2010, at approximately 13:20, officers conducted surveillance and observed CAMPUZANO and OSORIO-DEPAZ depart a residence, located at 12401 Copperfield Street, Austin, TX and travel to a residence, located at 8405 Winterhaven, Austin,

TX. Upon arrival, officers observed CAMPUZANO and OSORIO-DEPAZ enter the residence. CAMPUZANO was seen carrying a Tide detergent box.

32. On or about April 3, 2010, at approximately 13:24, FUENTEZ received an incoming telephone call from OSCAR EDGARDO-GUILLEN. EDGARDO-GUILLEN tells FUENTEZ that the "Senior" had arrived that the "work" was going to be weighed.

33. On or about April 3, 2010, at approximately 13:28, law enforcement officers observed FUENTEZ arrive at 8405 Winterhaven, Austin, TX. At approximately 13:33, CAMPUZANO and OSORIO-DEPAZ were observed departing 8405 Winterhaven. CAMPUZANO had the Tide detergent box in his possession as he was leaving.

34. On or about April 3, 2010, at approximately 14:58, MATUTE-GUILLEN and EDGARDO-GUILLEN and another unidentified hispanic male were observed departing 8405 Winterhaven and traveling to 5503 Bluff Springs Road, Bldg 7, Austin, TX.

35. On or about April 3, 2010, at approximately 15:13, FUENTEZ received an incoming telephone call from JAVIER CRUZ who was determined to be occupying the residence at 5503 Bluff Springs Road, Bldg 7. CRUZ stated that it "returns back well." FUENTEZ tells CRUZ to check it because some falls apart but it was not cut.

36. On or about April 3, 2010, officers observed EDGARDO-GUILLEN leave the residence at 5503 Bluff Springs Road and deposit items into the trash dumpster located at the apartment complex. Officers recovered those items which consisted of plastic "kilo" wrappings with a white powdery residue that tested positive for cocaine.

37. On or about April 4, 2010, at approximately 19:37, FUENTEZ made an outgoing telephone call to JOSE GUADALUPE-VASQUEZ. GUADLUPE-VASQUEZ stated he was at a

party but would ask about the stuff tomorrow. FUENTEZ responded that he didn't know if that "thing" would come or if he would go over there tomorrow.

38. On or about April 8, 2010, at approximately 13:14, FUENTEZ received an incoming call from JOSE GUADALUPE-VASQUEZ and asked FUENTEZ if he wanted any "stuff." FUENTEZ said yes and GUADALUPE-VASQUEZ stated that there were "six" left and FUENTEZ said that he wanted "three." GUADALUPE-VASQUEZ stated that he'd call later to meet up and drop it off later.

39. On or about April 8, 2010, law enforcement officers conducting surveillance observed GUADALUPE-VASQUEZ depart his residence located at 807 Turtle Creek, Austin, Texas and meet with an unidentified male. GUADALUPE-VASQUEZ was seen placing a heavy bag into his vehicle. Later the same day, GUADALUPE-VASQUEZ was observed meeting with FUENTEZ.

40. On or about April 9, 2010, at approximately 12:18, FUENTEZ receives a call from a FNU LNU and they discuss amounts of cocaine in either a seven (7) ounce portion or a nine (9) ounce portion. FUENTEZ is overheard stating to another person in the same room, "Hey Cuco" how much do you want, to which "Cuco" responds that he wants the nine (9). A later call the same day involves FNU LNU asking FUENTEZ, what "brand" or quality the dope is. FUENTEZ is overheard asking "Cuco" the brand, to which "Cuco" states that he does not know. FUENTEZ tells FNU LNU that he'll get back with him.

41. On or about April 11, 2010, JOSE REYNALDO CRUZ delivered a quantity of cocaine to a confidential source (CS5) during a controlled purchase by law enforcement agents. During surveillance on this date, law enforcement officers observed JOSE REYNALDO CRUZ

arrive and meet with CS5 at a prearranged location and make a delivery of approximately 28 grams of cocaine.

42. On or about April 21, 2010, law enforcement agents executed a search warrant at the residence occupied by IRMA MAJANO-ORELLANA located at 401 Little Texas Lane, Apartment 2011, Austin, Texas where they located small amounts of both crack and powder cocaine, tally sheets and digital scales used to weigh controlled substances.

43. On or about April 21, 2010, law enforcement agents executed a search warrant at the residence occupied by EMMANUEL NAVA-BENITEZ, AURELIO MATUTE-GUILLEN, and OSCAR EDGARDO -GUILLEN, located at 8303 Bluff Sprigs Road, Austin, Texas where they located approximately 1.1 kilograms of cocaine, containers of "cut" or dilutants, wrapping material, and a press jack used for reforming diluted cocaine into kilogram "bricks."

44. On or about April 21, 2010, law enforcement agents executed a search warrant at the residence occupied by LUIS OSORIO-DEPAZ, located at 12401 Copperfield, Austin, Texas where they located approximately fourteen (14) ounces of powder cocaine, and a Smith & Wesson, 9 mm handgun.

45. On or about April 21, 2010, law enforcement agents executed a search warrant at a residence utilized by PEDRO FUENTEZ, 4410 Norwood, Austin, Texas, where approximately 2,000 grams of cocaine, approximately $15,400, and a Star 9mm handgun were located.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and subject to forfeiture pursuant to 21 U.S.C. § 853(a)]

As a result of the criminal violations set forth in Count I above, which is punishable by

imprisonment for more than one year, the United States gives notice that it intends to forfeit, but is not limited to, the below listed property from defendants, PEDRO FUENTEZ, JOSE REYNALDO CRUZ, JOSE GUADALUPE-VASQUEZ, OSCAR EDGARDO-GUILLEN, EMMANUEL NAVA-BENITEZ, IRMA MAJANO-ORELLANA, WALTER ROSALES, AURELIO MATUTE-GUILLEN, JOSE GOROSIETA-CAMPUZANO, LUIS OSORIO-DEPAZ, CELIA ELIZABETH AGUIRRE-FRIAS, JAVIER CRUZ, OSCAR BENITEZ-CORTEZ, and TINO BARELA-LASO. The defendants shall forfeit all right, title, and interest in said property pursuant to Fed .R. Crim. P. 32.2 and 21 U.S.C. §§ 853(a)(1) and (a)(2), which state the following:

> **21 U.S.C. §§ 853(a)**
> **(a) Property subject to criminal forfeiture**
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law–
>> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>> (2) any of the person's property used, or intended to be used, in any manner or part, to commit or to facilitate the commissions of, such violation.

This Notice of Demand for Forfeiture includes but is not limited to the following:

1. A Winchester, Model Defender, 12 gauge pump shotgun seized from 4216 South US 183 Highway, Austin, Texas;

2. A Marlin .22 caliber, semi-automatic rifle, seized from 401 Little Texas Lane, Apartment 2011, Austin, Texas;

3. A Winchester, Model 94AE, .45 caliber, lever action, Hays County Commemorative rifle seized from 4410 Norwood Lane, Austin, Texas;

4. A Smith and Wesson, 9mm caliber, semi-automatic pistol seized from 12401 Copperfield Drive, Austin, Texas;

5. An Interarmco, Model Star, 9mm caliber, semi-automatic pistol seized from 4410 Norwood Lane, Austin, Texas;

6. $3,400.00, more or less in U.S. Currency seized from 16817 Trevin Cove, Manor, Texas; and

7. $15,400, more or less in U.S. Currency seized from 4401 Norwood Lane, Austin, Texas.

A TRUE BILL:

**ORIGINAL SIGNATURE REDACTED PURSUANT TO E-GOVERNMENT ACT OF 2002**

JOHN E. MURPHY
United States Attorney

By: _____ GRANT SPARKS
DOUGLAS W. GARDNER            for
Assistant United States Attorney